IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. |
| | ) |
| Plaintiff, | ) JUDGE |
| | ) |
| v. | ) |
| | ) |
| $92,924.00 IN U.S. CURRENCY, | ) |
| | ) |
| Defendant. | ) |
| | ) **COMPLAINT IN FORFEITURE** |

NOW COMES Plaintiff, United States of America, by Carol M. Skutnik, Acting United States Attorney for the Northern District of Ohio, and Henry F. DeBaggis, Assistant U.S. Attorney, and files this Complaint in Forfeiture, alleging, in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure, as follows:

### JURISDICTION AND INTRODUCTION

1. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. Section 1345, and over an action for forfeiture under 28 U.S.C. Section 1355(a). This Court also has jurisdiction over this particular action under 21 U.S.C. Section 881(a)(6).

2. This Court has *in rem* jurisdiction over the defendant currency: (i) pursuant to 28 U.S.C. Section 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in this district; and, (ii) pursuant to 28 U.S.C. Section 1355(b)(1)(B), incorporating 28 U.S.C. Section 1395,

because the action accrued in this district. This Court will have control over the defendant currency through service of an arrest warrant *in rem*, which the Department of Homeland Security by Homeland Security Investigations (HSI) will execute upon the defendant currency. *See*, Supplemental Rules G(3)(b) and G(3)(c).

3. Venue is proper in this district: (i) pursuant to 28 U.S.C. Section 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in this district; and, (ii) pursuant to 28 U.S.C. Section 1395 because the action accrued in this district.

4. On or about September 23, 2024, Defendant $92,924.00 in U.S. Currency was seized from the person and carry-on bags of Amadou Tidiane Balde (BALDE) at Cleveland Hopkins International Airport, and the defendant currency is now in the custody of the federal government.

5. Subsequent to the seizure, U.S. Customs and Border Protection's (CBP) Fines, Penalties & Forfeiture Office (FP&F) commenced an administrative forfeiture proceeding against the defendant currency. A claim to the defendant currency was submitted by BALDE in the administrative forfeiture proceeding, thereby requiring the filing of this judicial forfeiture action.

6. Defendant $92,924.00 in U.S. Currency is subject to forfeiture to the United States under 21 U.S.C. Section 881(a)(6) in that it constitutes proceeds from illegal drug distribution activities, and/or was used - or was intended to be used - in exchange for illegal controlled substances, and/or was used - or was intended to be used - to facilitate illegal drug distribution activities.

## FORFEITURE

7. On or about September 23, 2024, HSI Task Force Officers (TFO) were conducting airport interdiction at Cleveland Hopkins International Airport, and BALDE was observed standing in the Group 2 boarding line at gate C21, in the C concourse for United Airlines flight UA1482, which was scheduled to depart for Los Angeles.

8. TFO Gibbons observed BALDE in possession of three carry-on bags, identified as: a black leather duffle bag; a green leather backpack; and a gray satchel.

9. TFO Gibbons' attention was further drawn to BALDE after he observed a bulge in BALDE's front left sweatshirt pocket, which TFO Gibbons believed to be bulk U.S. Currency. TFO Gibbons also observed BALDE to be in possession of multiple cell phones.

10. After BALDE scanned his ticket at Gate C21 and entered the jet bridge to the aircraft, TFO Gibbons approached BALDE, identified himself as a law enforcement officer, asked to speak with BALDE, and BALDE agreed.

11. TFO Gibbons asked BALDE where he was traveling, and BALDE stated, Los Angeles. TFO Gibbons asked BALDE how long he was going to be in Los Angeles and BALDE stated that he currently lives in California. BALDE was asked how long he was in Ohio, and BALDE stated only for a few days. BALDE could not remember the day he arrived in Ohio, and stated he was in Ohio to drop off a title for a vehicle.

12. TFO Gibbons asked BALDE if he was in possession of a large amount of U.S. Currency, and BALDE stated he had $2,000.00 or $3,000.00, in his front sweatshirt pocket. TFO Gibbons asked BALDE if he had any U.S. Currency in his bags, and BALDE stated that he

3

had U.S. Currency in his black duffle bag. TFO Gibbons asked BALDE how much total U.S. currency he had in his possession, and BALDE stated he had a total of $70,000.00.

13. TFO Gibbons asked BALDE if he would walk to the HSI airport office to talk to him further about the U.S. Currency in his possession, and BALDE agreed.

14. While walking to the HSI airport office, BALDE told TFO Gibbons that previously he had $140,000.00 in U.S. Currency seized from him and his friend at the airport in Detroit, Michigan, when they were traveling to Los Angeles.

15. BALDE stated to TFO Gibbons that he had bank receipts and pay stubs for all the U.S. Currency in his possession and that the U.S. Currency in his possession was from several businesses which he owned.

16. TFO Gibbons asked BALDE if he had any documentation or information relating to the title for the vehicle that he mentioned, and the only information about the vehicle BALDE provided was that it was a Mercedes Benz.

17. After they arrived at the HSI airport office, TFO Gibbons asked BALDE how much U.S. Currency was in his possession, and BALDE stated he had $70,000.00 to $73,000.00 in his possession. TFO Gibbons asked BALDE where the U.S. Currency was located, and BALDE stated he had U.S. Currency on his person and in his black duffle bag.

18. TFO Gibbons asked BALDE if he would remove the U.S. Currency from his person and place it on the table, and BALDE agreed and did so. TFO Gibbons asked BALDE if he had any U.S. Currency in his gray satchel, and BALDE stated that he just had "change" in his gray satchel. TFO Gibbons asked BALDE if he would remove the U.S. Currency from the gray satchel and place it on the table, and BALDE agreed and did so.

BALDE for the locations of the gas station and grocery stores, and BALDE provided the following locations:

      a.    622 Park Avenue, Rochester, New York (Stop One gas station),

      b.    300 Lake Ave., Rochester, New York (grocery store),

      c.    3670 Mount Read Blvd., Rochester, New York (grocery store), and

      d.    424 E. Ridge Rd., Rochester, New York (grocery store).

BALDE stated that the fourth grocery store location was on Clifford Road in Rochester, New York; however, BALDE could not recall the address on Clifford Road. Subsequent law enforcement investigation determined:

      a.    A Stop One gas station is not located at 622 Park Avenue, Rochester, New York,

      b.    There is a Champion Auto Sales located at 300 Lake Ave., Rochester, New York,

      c.    A plaza is located at 3670 Mount Read Blvd., Rochester, New York, in which Mark's Pizzeria, Mobile Solutions, Sky Nails, Cuts Unlimited, Rochester Jewelry, Pressure Palace Smoke and Vape Shop, Shawarma Restaurant, and New Fong Kitchen are located, and

      d.    There is no location on E. Ridge Rd. in Rochester, New York associated with the address 424 E. Ridge Rd., Rochester, New York.

24.    Although BALDE told TFO Gibbons that the currency in his possession was from his mother's home in New York, and that he earned it at his grocery store and gas station businesses in New York, when BALDE filed his claim for the return of the subject seized currency, he included Chase Bank account records for the time period August 21, 2024, to September 30, 2024, for The Smoke Plug, LLC, in Cleveland, Ohio, Red Eye Vipe, LLC, in Cleveland, Ohio, and Smoke City 645, LLC, in Cleveland Heights, Ohio. BALDE said nothing to TFO Gibbons about these Cleveland area businesses when he was interviewed at the airport

6

HSI office. BALDE's inclusion of the bank records of these Cleveland area businesses with his claim, suggests that the seized currency was from cash withdrawals from these accounts; however, the only significant withdrawals from these accounts were on dates after the seizure of the subject currency, after September 23, 2024.

25. Previously, on September 30, 2022, BALDE traveled to the Wayne County Airport in Detroit, Michigan, when his flight from New York stopped in Detroit for a connecting flight to Los Angeles.

26. After BALDE and his traveling companion, A.S., disembarked the plane and entered the Detroit Airport terminal, law enforcement approached and asked BALDE why a narcotic K9 would alert on his checked luggage, and BALDE stated, "I smoke a ton of weed." BALDE consented to a search of his checked luggage and law enforcement searched BALDE's luggage and found rubber-banded bulk cash hidden in clothing packed in the luggage. Approximately $54,170.00 in U.S. Currency was seized from BALDE's luggage, approximately $101,570.00 in U.S. Currency was seized from A.S.'s luggage, for a total of approximately $155,740.00 in U.S. Currency seized from BALDE and A.S. on September 20, 2022.

27. After the seizure of the U.S. Currency from BALDE and A.S. at the Detroit Airport, law enforcement determined that there was a state felony warrant for A.S. from Laramie, Wyoming, for unlawful possession of a controlled substance and dangerous drugs, for which extradition was requested, so A.S. was taken into custody. While A.S. was being taken into custody, he handed all his jewelry to BALDE, and A.S. was heard to tell BALDE, "Go get the 72k and bring it to LA asap."

28. After A.S. was taken into custody, A.S. made a phone call and a law enforcement officer, fluent in Arabic, overheard A.S. speaking in Arabic during the phone call. While

7

speaking in Arabic, A.S. told the party he was speaking with on the phone, to move money from numerous houses in New York.

29. During his interview in Detroit, BALDE was asked if he ever had any narcotic-related arrests, and BALDE stated, "Yes, I just got off probation." BALDE stated his probation was out of Wyoming for having fifty pounds of marijuana in a vehicle. BALDE's criminal history in Wyoming includes arrests for Unlawful Possession of a Controlled Substance (2020); Unlawful Manufacturing or Delivery of Schedule I Drug (2020); and Drugs Dangerous (Attempts and Conspiracies) (2021).

30. The total amount of currency seized from the person and carry-on bags of BALDE on September 23, 2024, at Cleveland Hopkins International Airport, was $92,924.00 in U.S. Currency.

## CONCLUSION

By reason of the foregoing, Defendant $92,924.00 in U.S. Currency is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6) in that it constitutes proceeds from illegal drug trafficking activities, and/or was used - or was intended to be used - in exchange for illegal controlled substances, and/or was used - or was intended to be used - to facilitate illegal drug trafficking activities.

WHEREFORE, plaintiff, the United States of America, requests that this Court enter judgment condemning the defendant currency and forfeiting it to the United States, and providing that the defendant currency be delivered into the custody of the United States for disposition according to law, and for such other relief as this Court may deem proper.

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney
Northern District of Ohio

By: _____
Henry F. DeBaggis (OH: 0007561)
Assistant United States Attorney
Carl B. Stokes U.S. Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
216.622.3749
Fax: 216.522.7499
Henry.DeBaggis@usdoj.gov

## VERIFICATION

STATE OF OHIO          )
                       ) SS.
COUNTY OF CUYAHOGA  )

I, Henry F. DeBaggis, under penalty of perjury, depose and say that I am an Assistant United States Attorney for the Northern District of Ohio, and the attorney for the plaintiff in the within entitled action. The foregoing Complaint in Forfeiture is based upon information officially provided to me and, to my knowledge and belief, is true and correct.

_____
Henry F. DeBaggis (OH: 0007561)
Assistant United States Attorney

Sworn to and subscribed in my presence this 11th day of February, 2025.

_____
Notary Public

DANIEL R. RANKE, Attorney At Law
Notary Public - State of Ohio
My commission has no expiration date
Section 147.03 O. R. C.

10